```
                                                        RECEIPT #  33164
                                                        AMOUNT $   150.00
          UNITED STATES DISTRICT COURT                  SUMMONS ISS. ✓
            DISTRICT OF MASSACHUSETTS                   LOCAL RULE 4.1
                                                        WAIVER OF SERV.
                                                        MCF ISSUED
NEW ENGLAND PHOENIX CO., INC.   )                       AO 120 OR 121
                                )                       BY DPTY CLK  ymm
              Plaintiff,        )                       DATE  9-7-01
                                )
                                )       COMPLAINT
v.                              )
                                )
METRO GLOBAL MEDIA INC. and     )
UNITED STOCK TRANSFER, INC.     )
                                )     01cv11544 GAO
              Defendants.       )
```

### Introduction

1. This is an action by plaintiff judgment creditor against two defendants, a public corporation and its stock transfer agent, for an accounting and for money damages based upon defendants' unauthorized transfer or cancellation of shares of corporate stock that had served as collateral for the judgment debt.

### Parties

2. Plaintiff New England Phoenix Co., Inc. is a Massachusetts corporation having a place of business at 337 Freeport Street, Boston, Massachusetts 02122.

3. Defendant Metro Global Media Inc. (Metro) is a public corporation having a principal place of business at 9315 Oso Avenue, Chatsworth, California 91311. Metro was formerly known as South Pointe Enterprises, Inc.

4. Defendant United Stock Transfer, Inc. (United) is a private corporation having a principal place of business at 3615 South Huron Street, Suite 104, Englewood, Colorado 80110.

### Jurisdiction

5. This Court has jurisdiction over this case under 28 U.S.C. § 1332 (diversity of citizenship). The amount in controversy exceeds $75,000.00.



## Facts

6. Metro is a public company (OTC symbol: MGBL) engaged in the production and distribution of adult entertainment products and publications, including film, video, DVD, Internet, magazines, and cable and satellite broadcast programming.

7. Metro operates nationwide and internationally through a web of affiliated and subsidiary companies, over which it exercises plenary control.

8. Metro's products and publications are distributed nationally and internationally – through newsstands, bookstores, video stores, and the Internet -- and Metro derives revenues from such products and publications within the Commonwealth of Massachusetts.

9. Metro operates directly in Massachusetts through, *inter alia*, its subsidiaries A.F.M. Limited, d/b/a Airborne For Men (AFM), and Amazing Superstores, Inc., which operate numerous adult-entertainment "superstores" in Massachusetts, and its subsidiary Amazing Media Group, Inc., which operates adult websites (amazingsex.com, amazingonline.com) and publishes several adult magazines.

10. At all times relevant hereto, Dennis Nichols (Nichols) was a corporate insider of Metro, holding various positions and titles within Metro's web of companies, including president of AFM.

11. United is a registered stock transfer agent, and at all times relevant hereto United acted as agent and fiduciary of Metro and its shareholders, charged with maintaining Metro's shareholding records and processing transfers or cancellations thereto.

12. On February 26, 1997, Nichols signed and delivered to Keystone Financial, Inc. (Keystone), of Kalamazoo, Michigan, a commercial promissory note (the Note), which Note was secured by Nichols's collateral pledge of up to 285,000 shares of common stock of Metro or its predecessor (the Collateral Shares) pursuant to the terms of a written pledge agreement.

13. Nichols defaulted in repayment of the Note.

14. In or about March 2000, Nichols conspired with certain other, as yet unidentified, corporate insiders of Metro to transfer or cancel the Collateral Shares in order to prevent their being liquidated by Keystone to repay Nichols's debt under the Note.

15. United processed the transfer or cancellation of the Collateral Shares without notifying Keystone. United knew or should have known that such action was not authorized by Keystone.

16. In March 2000, the closing price of Metro's shares was approximately $0.75/share. Thus, the Collateral Shares had a market value of approximately $213,750, which sum would have been sufficient to satisfy Nichols's indebtedness under the Note in full.

17. On August 29, 2000, Keystone assigned all of its right, title and interest in and to the Note and Collateral Shares to plaintiff.

18. Plaintiff reduced its claim against Nichols under Note to a $191,450.02 money judgment entered by the U.S. District Court for the Western District of Michigan, on January 30, 2001, in the case styled New England Phoenix Co., Inc. v. Nichols, Docket No. 4:00-CV192 (the Judgment).

19. To date, the Judgment has not been satisfied, in whole or in part.

20. Keystone and plaintiff have made repeated demands upon Metro and United – both orally and in writing – to return the Collateral Shares or to explain the fate of the Collateral Shares, yet, to date, Metro and United have failed and refused to respond to these demands, forcing plaintiff to file this action.

21. After being notified by Keystone and plaintiff that the transfer or cancellation of the Collateral Shares was unauthorized, both Metro and United engaged in a willful and concerted attempt to cover up their conduct, refusing to give any meaningful detail or explanation to plaintiff.

## Count 1
### (Accounting: Metro and United)

22. Plaintiff repeats and incorporates paragraphs 1 to 21, above.

23. As assignee of the rights of Keystone in and to the Collateral Shares, plaintiff is entitled to a full accounting from Metro and United as to the fate of the Collateral Shares, including without limitation identification of the individuals involved in the transfer or cancellation and any consideration paid or received in connection with such transaction.

24. The failure or refusal of Metro and United to provide an accounting should result in imposition against them of a judgment for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 2
### (Fraud: Metro)

25. Plaintiff repeats and incorporates paragraphs 1 to 21, above.

26. The conduct of Metro constitutes a fraud upon the plaintiff, wherein Metro conspired with Nichols, a Metro insider, to defraud plaintiff's assignor, Keystone, of its rights in and to the Collateral Shares.

27. Moreover, after being directly challenged by both Keystone and plaintiff for its conduct, Metro refused to respond or provide any meaningful information to plaintiff concerning the fate of the Collateral Shares.

28. Metro is liable to plaintiff for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 3
### (Intentional Interference With Contract: Metro)

29. Plaintiff repeats and incorporates paragraphs 1 to 21, above.

30. The pledge agreement between Keystone and Nichols constitutes a contract.

31. Metro knew or should have known of the existence of such contract.

32. Metro intentionally caused the cancellation or transfer of the Collateral Shares in breach of Nichols's contract with Keystone, thereby damaging Keystone.

33. Metro is liable to plaintiff (Keystone's assignee) for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 4
### (Conversion: Metro and United)

34. Plaintiff repeats and incorporates paragraphs 1 to 21, above.

35. The unauthorized transfer or cancellation of the Collateral Shares by Metro and United constitutes a conversion of plaintiff's property.

36. Metro and United are liable to plaintiff for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 5
### (Breach of Contract: Metro and United)

37. Plaintiff repeats and incorporates paragraphs 1 to 21, above.

38. Keystone's interest in the Collateral Shares constitutes a contractual relationship with the issuer, Metro and its registered transfer agent, United, which was breached by Metro and United upon their unauthorized transfer or cancellation of the Collateral Shares.

39. Metro and United are liable to plaintiff for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 6
### (Breach of Fiduciary Duty: Metro and United)

40. Plaintiff repeats and incorporates paragraphs 1to 21, above.

41. Metro, as the issuer of the Collateral Shares, and United, as Metro's registered transfer agent, owed a fiduciary duty to plaintiff's assignor, Keystone.

42. Metro and United breached their fiduciary duties by permitting the unauthorized transfer or cancellation of the Collateral Shares.

43. Metro and United are liable to plaintiff for money damages in the amount of the Judgment debt or, in the alternative and at plaintiff's election, for issuance or transfer to plaintiff of shares of stock to replace the Collateral Shares.

## Count 7
### (Violation of M.G.L. c. 93A: Metro and United)

44. Plaintiff repeats and incorporates paragraphs 1to 21, above.

45. The refusal of Metro and United, <u>after</u> being notified of the unauthorized transfer or cancellation of the Collateral Shares, to respond in any meaningful manner to the demands of Keystone or plaintiff for an explanation of the fate of the Collateral Shares constitutes unfair or deceptive acts and practices in violation of MGL c. 93A §§ 2, 11, for which Metro and United are liable to plaintiff for up to double or triple plaintiff's actual damages, and attorneys' fees.

### Request for Relief

WHEREFORE, plaintiff prays that this Court:

A.  Order that Metro and United provide plaintiff with a complete and detailed accounting of the transfer or cancellation of the Collateral Shares, including the identity of all individuals involved such transaction and the date and amount of any consideration paid or received in connection therewith;

B.  Enter judgment for plaintiff against defendants Metro and United in the principal amount of $191,450.02, plus post-judgment interest, and costs;

C.  Order, in the alternative and at plaintiff's election, that Metro and United issue or transfer to plaintiff shares of stock to replace the Collateral Shares;

D.  Award plaintiff up to triple its actual damages and its reasonable attorneys' fees; and

E.  Award such other and further relief as is just and proper.

Respectfully submitted,

NEW ENGLAND PHOENIX CO., INC.
By its attorney,

John M. Keough (BBO #546729)
New England Phoenix Co., Inc.
337 Freeport Street
Boston MA 02122
Tel: (617) 288-0612

Dated: September 7, 2001